Case number 24-5239, In-Rate Application of the United States for an Order pursuant to 18 U.S.C. 2705B, Empower, Oversight, Whistleblowers, and Research, Appellants for the United States of America. Mr. Field for the Appellants, Mr. Hansberg for the Appellant. Good morning, Council. Mr. Field, please proceed when you're ready. May I please report, Brian Field on behalf of the Appellant, Empower, Oversight, Whistleblowers, and Research. I'd like to reserve two minutes for rebuttal. Your Honors, there are two reasons that the District Court's decision here should be reversed, and I'll address both in turn. First, because there is sufficient information in the public domain, reversal is appropriate under any legal standard. And second, the District Court erred in reviewing Empower, Oversight's request under Rule 6e. On this first point, I'd like to begin where much of the briefing ended. This Court should reverse the District Court, and in doing so, it need not determine or resolve the question of whether NDO applications are subject to Rule 6e, the common law, or the First Amendment. Release under any standard is appropriate because the information is sufficiently public. In the OIG report that we submitted- So you don't think that we need to resolve whether or not it's a judicial record or an ancillary proceeding with respect to the grand jury proceedings? I think under any standard, release is appropriate here, so the Court need not. Now, I would say the Court can and should conclude that these records are not 6e records, but because the information- But this generally is not a common law right of access to something that's attended to a grand jury proceeding because that's secret. So wouldn't we have to make a determination one way or the other? Well, if we are proceeding down the Rule 6e route, 6e yields when the information is publicly disclosed or is in the public domain. If we're proceeding down the common law route, the public release and discussion of information weighs in favor of release under the Hubbard factors. So all I'm submitting is that there is a way to decide this case short of resolving which path we should be going down. The District Court actually had an in-camera proceeding and determined that certain documents could be released, but then some redacted and some not released. That's correct, Your Honor. The District Court reviewed the NDO applications in-camera and concluded that certain information could be released and that certain information needed to be redacted. We don't think based on a public record through the OIG report that that decision was correct. We think that the redacted material should be released. And the reason we think that, there's really four things we know from the OIG report that point persuasively in favor of additional release being necessary. First and foremost, we see that the OIG report quotes from NDO applications at pages 41 to 42 of the OIG report. If DOJ is correct and NDO applications are protected Rule 6e materials, DOJ is necessarily arguing that OIG violated Rule 6e. That, of course, can't be the case. In fact, in DOJ's brief at page 35, they say the OIG report did not disclose Rule 6e materials. But how can that be the case? We have an OIG report that is quoting the explanatory portions of an NDO application. That's precisely what Empower Oversight is asking for. And that's precisely what DOJ is saying Empower Oversight cannot have. But somehow DOJ's Office of the Inspector General is able to discuss. But that report was not before the District Court. Your Honor, it was not before the District Court. And I'm just asking that, what do we do about that? Is there a remand necessary just for the District Court to then look at that report and then look at what its ruling was against that report? So N. Ray Cheney is instructive here. So N. Ray Cheney says the fact that this information came out after a District Court's decision is not dispositive. The Court can still consider it. To be sure, N. Ray Cheney remanded the case. We don't actually think that's necessary here for a few reasons. First and foremost is the parties have met issue here quite a bit on the OIG report. We fully briefed it in this case. Both sides have had occasion to discuss it. We also addressed the public disclosure point in the District Court. The District Court has had an opportunity to see both sides' view of what is the relevance of public disclosure and how is that relevant to the 6E analysis in the DOJ's view and our view under Hubbard. Because of those, we think that remand is not necessary. And I would also point out that N. Ray Cheney had a really different fact pattern. In that case, it was just a reference from the Office of the Special Counsel stating that there were some immunity questions raised. Politico in that case requested remand, and there was an open question as to how much that public statement actually changes the dispute here. Our case, I think, is quite different. You have a 90-page OIG report that gets into detail about this investigation, gets into detail about the NDO applications, and we've had occasion to brief them. So there isn't an open question as to how it changes the dynamics. I think it changes it fundamentally. With the OIG report, so a couple of things. There's no dispute that the particular NDO applications in this case, the unredacted NDO applications in this case, are not made public. They're not already public somewhere. The NDO applications that we are seeking are public only after the District Court's decision. And only two of them of multiple and only as redacted.  And then with the OIG reports, do we know from the OIG report itself that it points to a particular NDO application? We know. So at pages 41 to 42, the OIG report quotes an example of the boilerplate explanation. But it's just a boilerplate example. So the OIG report itself doesn't make it public that it relates to a particular NDO application. Like with a case number or something like that. That's not that kind of connection. That's correct, Ron, and I would have two points to respond. One is I think we need to step back for a moment and really keep in mind what DOJ's position is here. DOJ is not saying this particular NDO application is unique and is subject to Rule 6e. It has grand jury information in it. They're also not saying that portions of it are subject to Rule 6e. They're saying NDO applications at large are Rule 6e materials. Therefore, they have to stay protected. So your Honor's question, yes, it is presumably a different NDO application. We actually don't know, right? But if we stipulate that it's a different NDO application, that still raises the question of how can OIG be quoting an NDO application if it's supposed to be private? But on your more specific... I thought there were two different things going on. I thought that, and obviously we'll hear from the government, but I thought there's a general argument about NDO applications vis-a-vis Rule 6e. And that may well be, you know, as a general matter, NDO applications that are submitted to a grand jury, for a grand jury, in connection with the grand jury, sorry, are generally protected grand jury materials for purposes of Rule 6e. And then there's the question of, okay, whatever you might think about that, here, there's some stuff that's already been made public. And then the question becomes, with respect to the stuff that's already been made public, does that mean that there's no need any longer to redact these, this NDO application in particular? Your Honor, we would certainly agree with that second point, that there is no, given the public disclosure, there's no need to continue the redaction. I would point to... I thought the relevant point there is that, well, if the material that's already been made public, i.e., the OIG report, doesn't point to a specific NDO application and let the public know which specific NDO application it relates to, then whatever might be true about a boilerplate NDO application being out there because of the OIG report doesn't point to any specific NDO application, including the one that's before us now. So that part of it hasn't been made public. Two points, Your Honor. First, I just wanted to finish, close the loop on what I was suggesting earlier, which is DOJ's position at pages 7, 14, and 18 of its brief point to NDO applications being subject to Rule 6e. Things, you know, at page 14, they say Rule 6e directly covers NDO applications. So I don't think DOJ's parsing it quite this way, and certainly DOJ's counsel can suggest otherwise, but I do want to say it is true that the OIG report doesn't, quote, Mr. Foster's NDO application, but we also can step back and look at facts and context clues and say we're talking about the same thing here. We have, now, to be sure, DOJ hasn't actually said we're not talking about the same thing. They've said Empower Oversight hasn't proven that we are, and I would invite the court to ask counsel what DOJ's position is on this, but the dates line up, the facts line up, and common sense shows we're talking about the same thing. Mr. Foster was Oversight Counsel for the Senate. This investigation involved members of the Senate Oversight Committee who were performing oversight of DOJ, having their records subpoenaed. We know the subpoena was issued in September 2017 in the OIG report. So, too, for Mr. Foster's. We know the NDO applications were September 2017 through August 2021. So, too, for the ones involving Mr. Foster. I think that these facts put together show a common sense conclusion that we're talking about the same thing, and then we're talking about them in depth. We're talking that they are boilerplate. When we look at the NDO application that's redacted, it's a very short explanatory section at paragraphs, I think, 8 through 10 that really seems to show that there's a boilerplate explanation. There's no discussion of risks and so forth that would be required under 2705B. I am curious about what you would say is the distinction here with respect to whether this should be classified as a judicial record or an ancillary proceeding. Because by your statement of suggesting that the government believes all NDO applications are subject to 6E, wouldn't there be a different analysis as to whether or not it's a judicial record or it's an ancillary grand jury proceeding? Stepping back, I don't know that that's the threshold question, Your Honor. I think judicial records, if we go to how this court addressed these questions in Leopold 2, judicial record was a starting point. Judicial records can still be subject to 6E. It can be a judicial record. Common law applies as the default unless Congress has spoken to it. So I think that would be the mode of analysis, Your Honor. I don't see how one could argue that these are not judicial records. These are applications that were filed in order to receive a court order. That seems to be in the heartland of a judicial record. And the district court kind of skipped over that, just made a little simple sentence about judicial record and then went right into ancillary record. That's correct. So I think that the way that I would frame this is the first question is judicial record. And Leopold 2 follows this same track. Judicial record is the first question. Common law applies as default is the second question. Has Congress spoken directly to it? That's where there's the 6E route, if Congress has spoken to it. Our position is that Congress hasn't spoken to it because this doesn't fall within the universe of ancillary grand jury records that we see in the Dow Jones case. It's the best example from this court. It really sets out what's an ancillary grand jury record. You're talking about things that disclose identities of witness, transcripts of hearings, and the like. An NDO application, if you look at 2705B, they don't have to talk about the grand jury's investigation at all in order to justify an NDO application. You could talk about a flight risk. You could talk about any number of different things. How do we know that what you're seeking doesn't do exactly that? Well, I mean, that it doesn't disclose this information? That it doesn't disclose names, identities, particular things that the grand jury is looking at. No, we are admittedly fighting with one arm tied behind our back because we're fighting against a sealed identity. The argument is it's a slam dunk. And I think you're skipping over some of the matters or facts or evidentiary arguments that are presented to the court. And so I think you have to address those if you're to prevail. Be happy to, Your Honor. So I think a few points. One is I do think that with the OIG report, it strains a bit of logic to think that there is any information in the NDO applications that would reveal the inner workings of the grand jury, as this court explained in Lebeau, in Chief Judge Nivasan's decision, or in the Commonwealth of Puerto Rico case, that there's information that's going to reveal some aspect of the grand jury's investigation. Those are the standards. And I, from the OIG report and from the briefing, because that's, in a public briefing, that's not the point that DOJ has made. DOJ has stood back and made this point more generally that NDO applications are 6E materials. If DOJ wants to make the argument that there's specific grand jury material scattered throughout the application, that's a different argument. And in fact, Chief Judge Boasberg addressed a similar argument in the New York Times case that we cited. And Chief Judge Boasberg there addressed the 6E question under parts four and five of the Hubbard factors, privacy and prejudice. That's a different factual matter. That's not the case we have here. I know you want to get to Hubbard, but what the government says is you don't get to Hubbard. All right? And you are setting up some threshold that you can see the judicial records, you can see, at least as I understand it, generally these matters may be under investigation by the grand jury. But as I hear your argument today, because the OIG report, as you discussed with the Chief Judge, talks about, for example, here's what these orders say, that the whole analysis changes and we're back to Hubbard. And I think that's a leap I'm having trouble following. I don't think we even need to make that leap, because I do think that If you're bound by 6E in their ancillary, you do have to make some sort of jump to get out of 6E. And where I was going was I don't think we're in 6E land to begin with. And that's why I don't, I see a substantial difference between an NDO application and like a motion to quash. A motion to quash, you're going to have to discuss the specifics of a grand jury's  Nothing to say that what Judge Gonsberg had before him and did in front of him doesn't do exactly what you said needs to be done. I do think, again, the fact that we're now almost a decade on from the investigation. That's another issue. That's a Hubbard issue. But we're not at Hubbard. That's not a Hubbard. Your Honor, respectfully, that's a 6E. But that's a 6E question. 6E yields. This Court has said that 6E yields when information becomes public. So it's precisely within the scope of 6E. You know what I'm saying. I just don't understand your argument because you have conceded, I thought in response to the Chief Judge's question, that you have no information about specific, do not disclose your orders, that that doesn't appear in the OIG report. We conceded that we do not know. Let me say it differently. We concede that the OIG report does not make express reference to Mr. Foster and the NDO applications here. That being said. Or anyone else specifically in that sense where the Chief Judge refused to release. We do know that the NDO applications were filed in this investigation about the seeking of communications records from members of Congress and staff. We know that it's from one of those investigations. It's related to one of those subpoenas. They don't specifically quote Mr. Foster's. But this wasn't an OIG report saying, oh, and by the way, there was this other NDO application somewhere else and this is what it said. It is from this investigation. But admittedly, we know it's not. Your theory is that once you know, for example, that there's an investigation of a committee and the staff to the committee, that there is no basis for keeping the NGO secret. I don't think our proposed rule is quite that narrow. I think we know. I thought that was pretty broad. I think that we would, I think the context was again, point to this being from the same investigation. If this court were to remand it, we would put in evidence that this is the same investigation. That's obviously not in the record below because the OIG report came out later. But that is absolutely information that on remand, we can put in the record and have the court look at our evidence that this is the exact same NDO application. But I don't think that that necessarily, that's a question that even needs to be answered because I still think under this court's Dow Jones decision, an NDO application at large cannot be seen as an ancillary grand jury record. I don't think, at the whole, I don't think that that analysis carries. It's a categorical approach. There can be NDO applications that discuss grand jury information. Parts four and five of Hubbard, I'll give the court an opportunity to assess that question. That's where Chief Judge Boasberg addressed it in a different case. That's where he should have addressed it here. There's no other questions? We should have no questions at this time. We'll give you a little time for rebuttal. Appreciate it. Mr. Hansford. Good morning and may it please the court, Eric Hansford for the United States. The district court properly found that this case presents a straightforward application of Rule 6e, which prohibits disclosure of any matter that is occurring before a grand jury. And I think I'll start where the argument ended, which is whether or not the NDO application that relates to a grand jury subpoena would normally be treated as Rule 6e material. I think this is most, it is reflected in Rule 6e-6, but it's most straightforward in local Rule 6.1, which we quote in the brief at page 17, that specifically says that an application filed in connection with a grand jury subpoena shall be filed under seal. And it can be unsealed if the district court finds that it is not necessary, that sealing is not necessary to prevent disclosure of matters occurring before the grand jury. So I think what that straightforwardly says is you start out with this being treated under seal as Rule 6e material. It should be unsealed insofar as it doesn't disclose, as you can unseal without disclosing matters occurring before the grand jury. That's precisely the inquiry that the district court engaged in in this case. And does the distinction between judicial record and whether it's ancillary matter to how you are saying that next step is with respect to 6e? No, I don't think so. I think the judicial record discussion here is just a red herring. I think that what we have is that Rule 6e and local Rule 6.1 says that these sorts of records are to be sealed insofar as they would, as their unsealing would disclose a matter occurring before the grand jury. So that is the question. In other words, for your purposes, it doesn't matter if they're judicial records. Correct. You're fine if they're judicial records, because I think even the other side, as I understand the argument from this morning and from the briefing, agrees that even if they're judicial records, you still have to ask the question whether they fall within the compass of Rule 6e. I think that's right. And it doesn't even really make sense to ask the judicial record question at the threshold, because really the threshold question is, is this Rule 6e material? If it is, it can't be disclosed. Correct. Unless it's a public. Exactly. And that's how Dow Jones, which I think is maybe the most thorough discussion of this, that's how it approaches this and just says, it's Rule 6e material. We don't need to get into unsealing. And so then turning to the OIG report here, I think our threshold argument is that this court should not be considering factual developments that post-date the district court's decision and instead we would just follow the normal appellate rule that we decide matters based on the record that is before the district court at the time of the district court's decision. They did cite that unpublished opinion by our court, though, in Ray Cheney. So Cheney is unpublished. Cheney does take a contrary approach. We agree with that. It's unpublished. We don't find the reasoning of that terribly persuasive. It's relying heavily on this 1989 sealed case. The 1989 sealed case makes a passing reference to how in a prior appeal they had decided to remand at the request of the government, which had prevailed in the original case. It is not a holding of sealed case. It's kind of a one-sentence background discussion. And I think there are lots of institutional reasons that we want this rule that you decide the record based on the—you decide the appeal based on the record before the district court. If there has been a later publication, why wouldn't that matter? Say that one more time. If there has been a later publication of the information, why wouldn't that matter? Like, if we're deciding something that goes against what's already out in the public universe, why wouldn't it matter that there's been a postdated record? So I think our position is that you could file a new unsealing application. That unsealing is often an iterative process. That is how it is supposed to work. But that it wouldn't justify a remand in this case. And I think— That would be the practical difference. So if there was a new motion filed, I mean, there's no—it's not like there's a res judicata problem with filing a new motion or something. It's not a res judicata issue. I do think it tells you about the default. So if you remand, then the default is more litigation on this issue. If you—if the—instead, this court says, affirmed the district court properly made its decision on the record before it. If you want to file a new unsealing application, you could do so. Then the default becomes the defendant or the appellant has to seek unsealing anew, has to make that decision anew. And I think it's relevant—you can see the relevance in this case, where I think a lot of their arguments are—relate to the, like, broader principles that are discussed in the OIG report. Even though we don't think the OIG report acts as a public disclosure as to the specifics here, I think there are broader themes of kind of how it is that DOJ was handling congressional subpoenas. Those are reflected in the OIG report. And so I'm not sure that further litigation really would necessarily occur, that the expense of further litigation would make sense in this case just for appellants to make their point further. I think it's possible the OIG report already makes that point for them. But I think just institutionally, it is better for the government. It's better for the court. It's better for all parties to have the record be determined by the district court, as opposed to trying to introduce new evidence on appeal that would alter the record. Okay. So if you say that it doesn't matter if it's a judicial record or an ancillary record, and you jump straight to 6C, you're suggesting that 6E supplants the common law right of access?  And I think Dow Jones has already said that, has already held that. I think the 2000 sealed case says that. And do you think that the district court sufficiently analyzed exactly what we're talking about here in terms of this supplanting? Yes. And I think the district court's approach, which is consistent with what the government's arguing here, is that we don't need to get into these judicial record questions because really everything's going to rise and fall on Rule 6E. And I think I take that to be the approach that the district court made here. We do want to say, as to the OIG report, in line with Judge Srinivasan's questions, the OIG report does not specifically identify the grand jury subpoena allegedly at issue here, or any other specific grand jury subpoenas as being discussed in the OIG report. It says that we are redacting Rule 6E material. We're not including Rule 6E material. We are not making disclosures of a matter occurring before the grand jury. And so I think this is also on different footing from Cheney, where in Cheney, everyone, the district court's opinion was based on the premise that it had not been disclosed that there was this executive privilege litigation going on, so nothing about it could be disclosed. And then by the time of appeal, that had been disclosed in a public filing by the government. So everyone agreed that did change the analysis. Here, there is strong disagreement on that. And I want to make sure also that we don't have a broad rule that all NDO, are you taking a position that all NDO applications would contain some type of secret information? No. And I mean, I think that, so it would have to be in connection with a grand jury subpoena. And under the Rule 6E principles and the 6.1 principles, it is only sealed insofar as it discusses a matter that is occurring before the grand jury. So that is the part that is sealed, is if it discusses a matter that is occurring before the grand jury, then it's sealed. If it's an NDO application related to a grand jury, then it seems like, I'm not suggesting this is necessarily a problem for you, but it seems like looking at the text of Rule 6E, just so I have it right, seems pretty darn likely that it's going to involve disclosure of a matter occurring before a grand jury if the NDO application were unveiled. Yes, I think that's correct. And I think we, you know, in our public portion of the brief, we explain why that is generally going to be correct on pages 21 to 22. But that is where the sealing comes from, is because it is discussing a matter occurring before a grand jury, which is just always going to be sealed material. It's not something special about the NDO application. The Rule already talks about the subpoenas that are often tied up with an NDO application. Correct, exactly. So we know that it sweeps to cover all subpoenas related to grand juries, and an NDO application could be seen as an adjunct to a subpoena. Right. And Lopez also says that it's going to cover grand jury subpoenas, that those are going to be fall under risks. Oh, go ahead. Go ahead. In your line. It was going to switch a little bit, but I want to make sure. Okay, just end right now, because there was a remand there, I believe. Yes, there was a remand in that case, though it was I'm sorry, I'm forgetting the grounds for the remand at this point. But it was specific as to the, well, I guess, INRAE-NORTH, they disclose much of the independent counsel report, for the most part. The report disclosed much of what had been previously disclosed. So INRAE-NORTH is about the independent counsel report that is related to the Iran-Contra scandal, and I think, I guess, and I think what the court says is, in that case, we, there has been such public disclosures that we think the cat is out of the bag. That may be the origination of the cat is out of the bag line. And so, therefore, we are going to disclose the independent counsel report. I guess I'm not. Unlike the OIG report here. So the OIG report does not disclose Rule 6e material, whereas the independent counsel report or the discussions of it, the interim reports had disclosed the Rule 6e material. So that had been disclosed as Rule 6e material already. The OIG report does not disclose that. I guess I'm not remembering if there actually was a, I'm not sure there was a remand in NORTH. I think the court actually just. I didn't mean remand. They allow the review of the report. That's, that's correct. And they found, and I think NORTH is an unusual case where they say, kind of, we have to do, we can't do redactions. We have to, it has to be all disclosed or all undisclosed. But they recognize this is all under, falling under Rule 6e. And then they say, all of this is already out in the public domain. And therefore, we are going to. The distinction for you is in NORTH, what was out in the public domain already is different from what is ostensibly out in the public domain now as a result of the OIG report. Exactly. That's correct. On that question. So I know you've got your threshold point that we shouldn't be talking about the OIG report at all because it comes about after the record that the district court is looking at. So just put that aside for a second and assume that we're going to look at it, at least that we can. Then on that, if we do, it sounds like you're focused on the point that the OIG report actually doesn't itself disclose 6e materials. And with respect to the NDO application that's before us here, it doesn't, on its face, tie anything to a particular NDO application. Right. So the OIG report does not say that it is discussing the NDO application. That's at issue in this case. If that were the important criteria, and it could be, if that were the important criteria, and I guess the question is, what the other side says is, look, just as a matter of context, you kind of look at the calendars, you align things up, and it almost seems like it kind of has to be. And so I just heard that statement, and I'm just putting that, giving you an opportunity to respond to it.  So I would say, first, they've said that in the abstract, but kind of not said that with specifics. They have not pointed to here, you know, line by line, here in the OIG report, here's what we have. This lines up with this specific subpoena. So they've kind of made this kind of general argument, but have not made the specifics argument that I think you would need to have public disclosure. But I think you can look at the Dow Jones case, where there's reporters, that's about the Clinton grand jury investigation. There's reporters camped out outside the courthouse. Reporters are reporting on who's going into the courthouse, who's not. They're kind of trying to put together what's going on in the grand jury investigation. And this court says, that is not, that is not cat out of the bag. That's not kind of putting together the pieces like that. That's not going to work for a grand jury disclosure. And instead, I think In re Taney does have a good summary of this, is what you need is the witness to actually say, here's what I testified in the grand jury. You need the attorney for the witness to say that, or you need the government to have a public filing that says, here's what was discussed in the grand jury. So in other words, from your perspective, from the government's perspective, even if you could look at the context and make an educated assessment of what might very likely be an issue, that's still not enough for purposes of a cat out of the bag idea. That's correct. And I think that's also consistent with what this court says in North, which is that, you know, even if you have kind of leaks that are happening, even if you have reporting on what's likely happening, the government's obligation is nonetheless to stand silent in that instance, is not to provide confirmation of that and not to use the fact that leaks are out to say that Rule 6e has disappeared. There are no further questions. I don't have additional questions at this point. We ask this court to adjourn. Thank you, counsel. Mr. Field, we'll give you the two minutes you asked for for rebuttal. Thank you, Your Honor. Just a few points. I would like to note counsel raised a question about whether or not we have really tied things together from the OIG report and the record here. Just at a very high level, we have at page 42 from the OIG report to the date of the  We have the subpoena and the record at appendix pages 45 to 47. We have the applications discussed in the OIG report. We have details about the investigation at pages 27 to 28 of the OIG report, which line up with the facts we've discussed in the briefing below. We have the OIG report at page 42 talking about the last NDO, which lines up precisely with the dates of the NDO application. I'm sorry, the NDO at appendix pages 42 to 43. And we also know from the fact that the NDO applications, I'm sorry, the NDOs have been allowed to expire that the underlying grand jury investigation is complete, that Google was allowed to inform Mr. Foster, which Douglas loyal decision of the Supreme Court says that weighs in favor of release, even if we're operating under 6E. I want to also make sure to emphasize that to my discussion with Judge Rogers. If there is identity information, we've said all along, identity information is clearly something that could still be redacted. There's discussion of local rule 6.1, I think that's a bit of a red herring because this court said in the 2000 In Re Sealed case, that is just another, basically another definition of an ancillary grand jury record. 6.1 is not a different rule, it's just discussing the ancillary grand jury records. In Re North is really, really important because in In Re North, the court focused on the partial release of information and said the partialness of the release weighs in favor of full release because when you have partial information out there, you have partial conclusions being reached by the public. So the partialness of the release of information here with the OIG report actually weighs in favor of full release under In Re North. It sounded to me like DOJ counsel agreed that the explanatory language from an NDO application can be released because that is, after all, an OIG report. I'm sorry, as counsel stated, that's not grand jury information. So we would suggest that the same is the case here. And the last point I want to make, Your Honor, is you said that it's likely that any NDO application related to a grand jury subpoena is going to address grand jury information. I think if you look at the five subparts of 2705B, you'll see that any one of those could be addressed without discussing any aspect of a grand jury investigation. You have a flight risk or something like that discussed. So it's not necessarily the case that any NDO application tied to a subpoena is going to discuss a grand jury's investigation. And with that, we would request that this court reverse the district court. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Childs; Rogers